IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| ROBERT BYTNER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Civil No. 2:17-cv-01675 |
| | ) | Judge Nora Barry Fischer |
| THE ALLEGHENY COUNTY JAIL and | ) | |
| ORLANDO HARPER, Warden, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

**I.     INTRODUCTION**

This is a civil-rights action arising from the termination of Robert Bytner ("Plaintiff") from his employment at the Allegheny County Jail (the "ACJ"). Plaintiff alleges counts of reverse race discrimination, reverse gender discrimination, age discrimination, and a violation of his right to due process. (Docket No. 9 at ¶ 4). Defendants ACJ and Warden Orlando Harper ("Harper") have moved to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), arguing that Plaintiff failed to exhaust his administrative remedies, and his claims are thus barred by the applicable statutes of limitations. (Docket No. 12 at 1-2). This motion has been fully briefed and is now ripe for disposition. After careful consideration of the parties' briefs, and for the following reasons, Defendants' Motion to Dismiss (the "Motion") is GRANTED.

**II.    FACTUAL BACKGROUND**

**A.    Employment at ACJ**

Plaintiff, worked as a Captain and, later, as a Major, for ACJ between February 2006 and his termination on November 11, 2015. (Docket No. 9 at ¶¶ 1, 11, 23). Plaintiff alleges that, on September 29, 2015, HR Director Nicole Nagle ("Nagle") met with him to gather information

1

about a complaint that Caucasian supervisor Bill Mystic ("Mystic") had filed against the African-American Deputy Warden, Monica Long ("Long"). (*Id.* at ¶ 12). Plaintiff expressed his fear that Harper would retaliate against Nagle because Harper and Long were friends, but Plaintiff nevertheless signed a statement in support of Mystic's complaint. (*Id.* at ¶¶ 15-16). Harper was subsequently notified of Plaintiff's support for Mystic. (*Id.* at ¶ 19).

Additionally, during the September 29, 2015 meeting, Nagle accused Plaintiff of having sexually harassed Long. (*Id.* at ¶ 16). Nagle also stated that she was going to forward Long's complaint against Plaintiff to Harper. (*Id.* at ¶ 18). Plaintiff was surprised by this accusation, which he denied, and instead said that there was only "mutual joking" between him and Long. (*Id.* at ¶ 17). No female officer had ever objected to Plaintiff's statements, nor had any ever alleged that Plaintiff touched them inappropriately. (*Id.* at ¶¶ 26-27). Plaintiff claims that Harper contacted female officers to see whether any of them had complaints against Plaintiff. (*Id.* at ¶ 20). Further, in October 2015, Harper questioned Plaintiff about his "communications" with Officer Tamisha Ramsey ("Ramsey"). (*Id.* at ¶ 22). Finally, on November 11, 2015 Harper terminated Plaintiff for allegedly sexually harassing officer Euwanda Eubanks ("Eubanks"). (*Id.* at ¶ 23-24). Plaintiff claims that he was terminated because of information solicited from officers Ramsey and Eubanks, even though neither had initiated a sexual harassment complaint on their own accord. (*Id.* at ¶ 28, 30). Plaintiff further notes that his personnel file "was generally free of discipline prior to 2014." (*Id.* at ¶ 10).

Plaintiff filed the instant complaint on December 28, 2017. (Docket No. 1). Although Plaintiff claims that he had exhausted his administrative remedies and therefore satisfied the conditions precedent to suit, his complaint does not allege when he filed his EEOC charge or that he received a right to sue letter. *See Mandel v. M&Q Packaging Corp.*, 706 F.3d 157, 163 (3d Cir.

2013) ("To bring a claim under Title VII, a plaintiff *must* file a charge of discrimination with the EEOC and procure a notice of the right to sue.") (emphasis added). Defendants, however, have submitted documentation regarding the first mystery, namely when the EEOC charge was filed, by attaching a copy of that charge to their motion to dismiss. (Docket No. 12-2). According to that document, whose authenticity Plaintiff has not disputed, Plaintiff filed his EEOC charge on February 24, 2017. (*Id.*)

### B. <u>Causes of Action</u>

Plaintiff first alleges that Defendants' actions were the result of reverse race discrimination. (*See id.* at ¶¶ 4(a), 35-36, 41). Plaintiff had been the only Caucasian Major at ACJ at the time of his termination. (*Id.* at ¶ 31). Harper, Long, Ramsey, and Eubanks are African-American. (*Id.* at ¶¶ 12, 15, 22, 24). Further, Plaintiff states he did not receive the same progressive discipline that African-American officers received. (*Id.* at ¶ 29). According to Plaintiff, African-American officers (both male and female) had "had a disproportionate number of documented progressive disciplines and remained employed by the ACJ." (*Id.* at ¶¶ 37-40).

Second, Plaintiff claims that the events resulting in his termination were the result of gender discrimination by ACJ. (*See id.* at ¶¶ 4(b), 42, 45). In support of this claim, he alleges that female officers had "had a disproportionate number of documented progressive disciplines and retained their employment." (*Id.* at ¶ 44).

Third, Plaintiff, who is over fifty-five years old, claims that the ACJ subjected him to disparate treatment because of his age. (*See id.* at ¶¶ 4(c), 6, 46-50). He cites two incidents in support of this contention: (1) one "[s]ubstantially younger Caucasian correction officer" received, but did not serve, a five-day suspension for allegedly fondling a female officer; and (2) a different

3

"[s]ubstantially younger Caucasian correction officer" was suspended for one day for allegedly sexually harassing and inappropriately touching an inmate. (*Id.* at ¶¶ 48-49).

Finally, Plaintiff claims that he was terminated without having been afforded procedural due process. (*Id.* at ¶¶ 4(d), 51). Although at Plaintiff's post-termination appeal hearing, Harper testified that it was his policy to give all officers a *Loudermill* hearing prior to termination, Plaintiff did not receive such a hearing in connection with his November 2015 termination and was thus denied the opportunity to hear and respond to the allegations against him. (*Id.* at ¶¶ 52-53, 55). Harper admitted he could not recall another instance in which he did not afford an officer a *Loudermill* hearing. (*Id.* at ¶ 54).

## III. LEGAL STANDARD

When reviewing a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court must "'accept all factual allegations as true, construe the complaint in the light most favorable to the plaintiff, and determine whether, under any reasonable reading of the complaint, the plaintiff may be entitled to relief.'" *Eid v. Thompson*, 740 F.3d 118, 122 (3d Cir. 2014) (quoting *Phillips v. County of Allegheny*, 515 F.3d 224, 233 (3d Cir. 2008)). To survive a Rule 12(b)(6) challenge, a plaintiff's "'[f]actual allegations must be enough to raise a right to relief above the speculative level.'" *Id.* (quoting *Bell Atlantic v. Twombly*, 550 U.S. 544, 555 (2007). "Thus, 'only a complaint that states a plausible claim for relief survives a motion to dismiss.'"[1] *Id.* (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

---

[1] Plaintiff correctly points out that Rule 8(a)(2)of the Federal Rules of Civil Procedure requires that a pleading contain, *inter alia*, "a short and plain statement of the claim showing that the pleader is entitled to relief." (Docket No. 14 at 2) (quoting Fed. R. Civ. P. 8(a)(2)). However, his reliance upon *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957), for the proposition that the Court may dismiss the complaint only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief" is misplaced. (*See* Docket No. 14 at 1) (quoting *Conley*, 355 U.S. at 45-46). In *Twombly*, the Supreme Court expressly overruled *Conley* and adopted the plausibility standard discussed above. 550 U.S. at 563 ("The ['no-set-of-facts'] phrase is best forgotten as an incomplete, negative gloss on an accepted pleading standard."); *see also Fowler*, 578 F.3d at 210 (noting that, after *Twombly*, *Iqbal* subsequently "provide[d] the final nail-in-the-coffin for the [*Conley*] standard").

Although the Court must accept the allegations in the complaint as true, "'[it is] not compelled to accept unsupported conclusions and unwarranted inferences, or a legal conclusion couched as a factual allegation.'" *Morrow v. Balaski*, 719 F.3d 160, 165 (3d Cir. 2013) (quoting *Baraka v. McGreevey*, 481 F.3d 187, 195 (3d Cir. 2007)). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal*, 556 U.S. at 678 (*citing Twombly*, 550 U.S. at 555). Instead, the plaintiff must plead facts which permit the court to make a reasonable inference that the defendant is liable. *Iqbal*, 556 U.S. at 678; *Twombly*, 550 U.S. at 556–57. Additionally, while courts deciding motions to dismiss "generally consider only the allegations contained in the complaint, exhibits attached to the complaint, and matters of public record," they may also consider an "undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on that document." *Pension Ben. Guar. Corp. v. White Consol. Industries, Inc.*, 998 F.2d 1192, 1196 (3d Cir. 1993).

Consistent with these principles, the Third Circuit Court of Appeals has prescribed a three-step analysis for purposes of determining whether a claim is plausible. First, the court should "outline the elements a plaintiff must plead to a state a claim for relief." *Bistrian v. Levi*, 696 F.3d 352, 365 (3d Cir. 2012). Second, the court should "peel away" legal conclusions that are not entitled to the assumption of truth. *Id.; see also Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations."). Third, the court should assume the veracity of all well-pled factual allegations and then "'determine whether they plausibly give rise to an entitlement to relief.'" *Bistrian*, 696 F.3d at 365 (quoting *Iqbal*, 556 U.S. at 679). This third step of the analysis is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* (quoting *Iqbal*, 556 U.S. at 679).

## IV. DISCUSSION

### A. Title VII and Age Discrimination

Plaintiff's first two causes of action are for reverse race discrimination and reverse gender discrimination. Race-based and sex-based discrimination claims fall under the umbrella of Title VII of the Civil Rights Act of 1964 ("Title VII"). Title VII prohibits employment practices that discriminate based on, *inter alia*, race and sex. 42 U.S.C. § 2000e-2(a). The Age Discrimination in Employment Act ("ADEA") likewise prohibits employers from discriminating against individuals who are over forty years old based on their age. 29 U.S.C. §§ 623(a), 631(a). The EEOC is the mechanism through which both Title VII and the ADEA claims must begin. *See Williams v. Pa. Human Rel. Comm'n*, 870 F.3d 294, 298 (3d Cir. 2017).

To begin the process of seeking relief, an aggrieved employee seeking must file a charge with the EEOC. *Id.* This requirement "gives the [EEOC] the opportunity to investigate, mediate, and take remedial action." *Id.* (quoting *Fowlkes v. Ironworkers Loc. 40*, 790 F.3d 378, 384 (2d Cir. 2015)). After investigation, if the EEOC finds there is reasonable cause to believe the allegations are true, it "shall endeavor to eliminate any such alleged unlawful employment practice . . . ." 42 U.S.C. § 2000e-5(b). The right to file with the EEOC is not unlimited, and an aggrieved individual must file a charge within 300 days of the "discrete discriminatory act." *See Mandel*, 706 F.3d at 165 (quoting *Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002)). Discrete acts include, as relevant here, termination. *Id.* (citing *Morgan*, 536 U.S. at 114). Plaintiff was terminated on November 11, 2015. (Docket No. 9 at ¶ 23). The 300-day statute of limitations, which started to run when Plaintiff was terminated, therefore ended on September 6, 2016.

Because Plaintiff did not file his EEOC complaint until February 24, 2017 (Docket No. 12-2),[2] his claims must be dismissed.

In his Response in Opposition to Defendants' Motion, Plaintiff argues that dismissal is not warranted because, on August 10, 2016, he learned "the names, races, genders and ages of officers who allegedly received more favorable treatment" than he had in disciplinary actions. (Docket No. 14 at 2). Plaintiff asks "that the Discovery Rule roll the statute of limitations period" to the date he learned of this additional information. (*Id.*).

Neither Title VII nor the ADEA have explicit discovery rules, but the Court may not presume that a discovery rule is implied in a federal statute of limitations. *See Rotkiske v. Klemm*, 890 F.3d 422, 428 (3d Cir. 2018). As a matter of statutory interpretation, "when the text of a statute and reasonable inferences from it give a clear answer, . . . that is the end of the matter." *Id.* (citing *Brown v. Gardner*, 513 U.S. 115, 120 (1994)) (internal quotations omitted). The statute setting forth the 300-day requirement reads in relevant part, "[the EEOC] charge shall be filed by or on behalf of the person aggrieved within three hundred days after the alleged unlawful employment practice occurred . . . ." 42 U.S.C. § 2000e-5(e)(1). That language is unambiguous, and, in

---

[2] "Technically, the Federal Rules of Civil Procedure require a defendant to plead an affirmative defense, like a statute of limitations defense, in the answer, not in a motion to dismiss." *Schmidt v. Skolas*, 770 F.3d 241, 249 (3d Cir. 2014) (citation omitted). However, "[t]he law of this Circuit (the so-called 'Third Circuit Rule') permits a limitations defense to be raised by a motion under Rule 12(b)(6), but only if the time alleged in the statement of the claim shows that the cause of action has not been brought within the statute of limitations." *Robinson v. Johnson*, 313 F.3d 128, 135 (3d Cir. 2002) (internal quotation omitted). Because undisputedly authentic documents and public documents like the EEOC charge filed at Docket No. 12-2 are properly considered in motions to dismiss, thereby in effect being treated as part of the pleadings, this Court may consider Docket No. 12-2 in deciding this motion to dismiss. *See Pension Benefit Guar. Corp.*, 998 F.2d at 1196 ("[A] court may consider an undisputedly authentic document that a defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document."). *See also U.S. Equal Employment Opportunity Comm'n v. Norfolk S. Corp.*, No. 2:17-CV-01251-CRE, 2018 WL 4334615, at *4 (W.D. Pa. Sept. 11, 2018) (citing cases and noting that documents filed with the EEOC are public records and may be considered without converting a motion to dismiss to a summary judgment motion).

accordance with the Third Circuit's guidance in *Rotkiske*, this Court declines to read a discovery rule into the statute. Plaintiff's Title VII and ADEA claims must be dismissed.

### B. 42 U.S.C. § 1983

Plaintiff claims that Defendants did not afford him due process when terminating him, thereby violating his rights under 42 U.S.C. § 1983. This claim is also time-barred. Section 1983 provides a cause of action for violations of a federally protected right. *Dique v. N.J. St. Police*, 603 F.3d 181, 185 (3d Cir. 2010). However, the statute of limitations applicable to a § 1983 claim is dictated by the personal-injury tort law of the state in which the cause of action arose. *Kach v. Hose*, 589 F.3d 626, 634 (3d Cir. 2009) (citing *Wallace v. Kato*, 549 U.S. 384, 387 (2007)). Pursuant to Pennsylvania law, the applicable statute of limitations is two years. Pa. Cons. Stat. § 5524(2); *see also id.* Plaintiff was terminated on November 11, 2015. (Docket No. 9 at ¶ 23). He filed his original Complaint with this Court on December 28, 2017, more than two years after his termination. (*See* Docket No. 1). Accordingly, his § 1983 claim is time-barred.

Plaintiff argued that the statute of limitations should be tolled "for all of his discrimination claims," but he did not make the same argument with respect to his § 1983 claims. To the extent that Plaintiff were to make such an argument, it would not succeed. State law governs the tolling of claims under § 1983, and, in Pennsylvania, the discovery rule only applies if, at the time of his injury, the party neither knew nor reasonably could have known of both the injury and the cause thereof. *Kach*, 589 F.3d at 639; *Fine*, 870 A.2d at 859. Here, Plaintiff knew of his injury at the time of his termination, and the statute of limitations therefore began to run on November 11, 2015. (Docket No. 9 at ¶¶ 23, 25, 53). As such, Plaintiff's due process claim is untimely and must be dismissed.

C. **42 U.S.C. § 1981**

Plaintiff also invokes 42 U.S.C. § 1981 in his race-discrimination claim. (Docket No. 9 at ¶ 4(a)). Plaintiff may not rely § 1981 for three reasons. First, § 1981 does not provide Plaintiff with a private right of action against Defendants. *McGovern v. City of Philadelphia*, 554 F.3d 114, 116 (3d Cir. 2009). Second, although § 1983 provides a remedy to enforce § 1981 against state actors, *id.* at 117, Plaintiff's § 1983 claims are time-barred, as set forth above. Finally, even if his § 1983 claims were not time-barred, employment-related claims for racial discrimination may not be brought under § 1983. *Williams*, 870 F.3d at 300 (allowing a Title VII claim to be brought under § 1983 "would thwart Congress's [sic] carefully crafted administrative scheme.") Accordingly, the Court grants the motion to dismiss Plaintiff's § 1981 claims.

V. **CONCLUSION**

For the foregoing reasons, the Court finds that Plaintiff has failed to state a claim upon which relief can be granted. The Court also denies Plaintiff leave to amend his complaint a second time because any such amendment would be futile given that all of his claims are barred by the applicable statutes of limitations. *See Rodwich v. Meisel*, Civ. A. No. 15-1228, 2016 WL 2643265, at *3 (W.D. Pa. May 10, 2016) ("leave to amend may be denied if an amendment would be futile such as in the present situation where the claim is barred by the statute of limitations."); *Cowell v. Palmer Twp.*, 263 F.3d 286, 296 (3d Cir. 2001) (holding that district court did not abuse its discretion in denying leave to amend where additional factual allegations in plaintiff's memorandum in opposition would not have overcome the statute of limitations.). Therefore, Defendant's Motion to Dismiss (Docket No. [12]) is GRANTED and Plaintiff's Amended Complaint is DISMISSED, with prejudice. An appropriate Order follows.

.              *s/Nora Barry Fischer*
               Nora Barry Fischer, U.S. District Judge

Dated: September 17, 2018

cc/ecf: All counsel of record